# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

LAUREN GOTTHELF,

      Plaintiff,

v.

BOULDER COUNTY, COLORADO;
SHERIFF JOE PELLE, in his individual and official capacity;
SERGEANT CHRIS REISS, in his individual and official capacities;
ANTHONY BRYANT, in his individual and official capacities;
KAYLEIGH MARTINEZ, in her individual and official capacities;
AMBER MCNEIL, in her individual and official capacities;
CHAD PALMER, in his individual and official capacities;

      Defendants.

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND
---

Plaintiff, Lauren Gotthelf, by and through counsel, Mari Newman and Reid Allison of

KILLMER, LANE & NEWMAN, LLP, alleges for her Complaint and Jury Demand as follows:

## I.      INTRODUCTION

1.      Plaintiff Lauren Gotthelf spent the early afternoon of November 25, 2017 walking

with her service dog, Sage, in downtown Boulder, Colorado. Within hours she would be

handcuffed behind her back, pinned to a restraint chair, and surrounded by at least six Boulder

County Sheriff's Office ("BCSO") jail officers. Though Ms. Gotthelf did not resist or threaten

the officers in any way, BSCO officers repeatedly subjected her to obviously unreasonable force

and extreme pain, including strapping her into a restraint chair and inflicting multiple pressure

point pain compliance techniques, and culminating in Sergeant Chris Reiss tasing her despite the fact that she was fully restrained and could not move.

2.     The individually named Defendants engaged in this concerted excessive force pursuant to the custom, policy and practice of Boulder County. Ms. Gotthelf brings suit to vindicate the rights Defendants violated, including her right to be free from excessive force, guaranteed by the Fourteenth Amendment to the United States Constitution, as well as her right to reasonable accommodations for her actual or perceived disability, protected by the Americans with Disabilities Act ("ADA"), 42 U.S. § 12132, *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*

## II.  JURISDICTION AND VENUE

3.     This action arises under the Constitution and laws of the United States and the State of Colorado and is brought pursuant to Title 42 U.S.C. § 1983, 42 U.S.C. § 12132, *et seq.*, and 29 U.S. § 701, *et seq.*

4.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

5.     Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

6.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

## III.     PARTIES

**Plaintiff**

7.     Plaintiff, Lauren Gotthelf, is a citizen of the United States and was at all relevant times a resident of and domiciled in the State of Colorado.

2

**Defendants**

6. Boulder County is a governmental entity chartered under the laws of the State of Colorado. Among other things, Boulder County operates the Boulder County Jail ("the Jail"), located at 3200 Airport Road in Boulder, Colorado.

7. At all times relevant to this Complaint, Defendant Sheriff Joe Pelle was a citizen of the United States, resident of and domiciled in the State of Colorado and was acting under color of state law in his capacity as the Boulder County Sheriff. Defendant Pelle in his official capacity, is a final policymaker for Boulder County with respect to all matters concerning the Boulder County Sheriff's Office and all of its divisions, including the Boulder County Jail.

8. Defendants Boulder County, Colorado and Sheriff Joe Pelle, in his official capacity, are collectively referred to as "the Boulder County Defendants."

9. At all times relevant to this Complaint, Defendants Deputy Amber McNeil, Sergeant Chris Reiss, Deputy Kayleigh Martinez, Deputy Anthony Bryant, Deputy Melissa Cirulli, and Deputy Chad Palmer, respectively, were each a citizen of the United States, resident of and domiciled in the State of Colorado and were each acting under color of state law in their respective capacities as law enforcement officers employed by the Boulder County Sheriff's Office. These Defendants are collectively referred to as "the individually named Defendants."

## IV.    FACTUAL ALLEGATIONS

### A.  Ms. Gotthelf's arrest and detention

10. On the afternoon of November 25, 2017, Ms. Gotthelf was with her longtime service dog, Sage, in downtown Boulder. (Ms. Gotthelf and Sage pictured below).



11.     Ms. Gotthelf had just had Sage's picture taken with Santa.

12.     As Ms. Gotthelf was heading back to her car, she and Sage walked on the Pearl Street Mall.

13.     Boulder Police Department Officer Ryan McAuley approached Ms. Gotthelf and saw her light a cigarette.

14.     Officer McAuley told Ms. Gotthelf that she could not smoke or have her dog on the mall.

15.     Ms. Gotthelf explained that Sage is her service dog, and that she had a right to have Sage with her under the Americans with Disabilities Act ("ADA").

16.     Officer McAuley informed Ms. Gotthelf that she would be receiving a summons for having her service dog on the mall, smoking in public, and littering (for throwing her cigarette to the ground when she saw Officer McAuley approach her).

4

17.     Objecting that Sage is her service dog and that there were other dogs on the mall whose owners were not being harassed or cited by Boulder PD officers, Ms. Gotthelf refused to sign the ticket.

18.     Officer McAuley then called back-up, and he and two other officers forcibly arrested Ms. Gotthelf on the mall.

19.     The officers ripped Sage away from Ms. Gotthelf, causing obvious distress to both Ms. Gotthelf and Sage.

20.     The officers took Ms. Gotthelf to the Boulder County Jail and "impounded" Sage.

**B.   The individually named Boulder County Sheriff's Office Defendants subjected Ms. Gotthelf to excessive force and disability discrimination at the Boulder County Jail.**

21.     When she arrived at the jail, Ms. Gotthelf informed BSCO personnel, including Defendants, that the arresting officers had taken her service dog, alerting Defendants that Ms. Gotthelf was a person with a disability.

22.     After Ms. Gotthelf was booked into the jail, BCSO deputies claimed that Ms. Gotthelf had expressed an intention to harm herself.

23.     Ms. Gotthelf denied making any suicidal statement but insisted that if the deputies actually believed that she was a danger to herself, she should be taken to the hospital or at least seen by a mental health professional.

24.     Instead, Defendant Deputy McNeill and Defendant Deputy Kayleigh Martinez discriminated against Ms. Gotthelf solely based on their assertion that she was expressing an intention to commit suicide – a mental health crisis, stemming from her actual and/or perceived disability – as an act of aggression and non-compliance.

25.     The truth is, though, Ms. Gotthelf had not behaved aggressively and had fully complied with all commands while she was in jail. Defendants knew this.

26.     Defendants treated Ms. Gotthelf worse than her similarly situated non-disabled counterparts at the jail (by intentionally subjecting her to the abuse described below) solely because of her actual and/or perceived disability and its manifestations.

27.     In response to their asserted belief that Ms. Gotthelf was experiencing a mental health crisis, the Defendant deputies demanded that she strip naked and put on a smock.

28.     Ms. Gotthelf questioned the need for this humiliating treatment, given the circumstances, but Defendants insisted that it was policy and she had no choice.

29.     Defendant Deputies McNeill, Cirulli, and Martinez then entered Ms. Gotthelf's cell, handcuffed her, and forcibly removed her.

30.     During this interaction, Defendant Sergeant Reiss drew his Taser and kept it trained on Ms. Gotthelf, even though she was surrounded by at least seven BCSO jail employees and had not physically threatened or resisted any jail deputy in any way during her detention.

31.     The Defendant deputies then shoved Ms. Gotthelf down into a restraint chair.

32.     At this point, Ms. Gotthelf was fully restrained; Ms. Gotthelf was handcuffed behind her back and physically pinned to the restraint chair by at least Defendant Deputies Cirulli, Martinez, McNeill, and Palmer.

33.     Despite the fact that she was fully restrained, and without any law enforcement justification whatsoever, Defendant Deputy Anthony Bryant immediately wrenched Ms. Gotthelf's head back to cause her sharp and intense physical pain with pressure on her hypoglossal nerve.

34.     By applying intense upward pressure under Ms. Gotthelf's jaw, Defendant Bryant not only caused pain to her throat and jaw, but also lifted her body upward causing painful tension against the opposing pressure of the belt restraint of the chair, the handcuffs behind her

back, and the unnecessary and excessive force being applied to her lower body by other Defendant officers, as described below.

35.    At the same time, and also without any reason, Defendant Deputy Martinez inflicted unnecessary pain on Ms. Gotthelf by applying pressure to a pressure point at Ms. Gotthelf's hip flexor.

36.    As Defendants Bryant and Martinez inflicted this pain on Ms. Gotthelf, other Defendant deputies were hands-on, pinning Ms. Gotthelf to the restraint chair.

37.    Defendant Deputy Cirulli had control of Ms. Gotthelf's right leg and Defendant Deputy Chad Palmer had control of her left leg. These Defendant deputies participated in the concerted use of force and did nothing to intervene to prevent their fellow officers' use of obviously excessive force.

38.    At this point, another Boulder Jail employee yanked a hood over Ms. Gotthelf's head for no discernible reason. Ms. Gotthelf had not spit at anyone in the jail, nor had she threatened to do so.

39.    Despite this outrageous treatment, Ms. Gotthelf still had not threatened or resisted any officer.

40.    While Defendants had Ms. Gotthelf fully restrained, handcuffed behind her back, strapped into a restraint chair, pinned down by multiple deputies, with a mask over her head, Defendant Bryant clutching her throat with a hypoglossal pain compliance hold, and Defendant Martinez applying painful pressure to her hip flexor, Defendant Sergeant Reiss unreasonably and unjustifiably escalated the total use of force.  For no legitimate law enforcement reason, Defendant Sergeant Reiss caused Ms. Gotthelf even more intense pain by tasing her on her upper thigh.

41.     Given that Ms. Gotthelf was fully restrained and had not resisted or threatened any officer, there was no law enforcement reason for Defendant Sergeant Reiss to tase her, or for the Defendant BCSO deputies to apply the multiple pressure point pain techniques that they inflicted upon her.

42.     For no legitimate law enforcement reason, Defendant Reiss continued to threaten that he would tase Ms. Gotthelf again.

43.     After this painful, humiliating, and unconstitutional treatment, Ms. Gotthelf was left restrained in the restraint chair for over 4 hours with a mask over her head.

44.     Defendants intentionally subjected Ms. Gotthelf to the gratuitous and sadistic force and restraints described solely because of her actual and/or perceived disability.

### C.   Boulder County's custom, practice, and policy of excessive force caused the individually named Defendants' unconstitutional use of force.

45.     Defendants inflicted—and Ms. Gotthelf suffered—these constitutional violations because of the BCSO's customs, practices, and policies of using excessive force.

46.     The BCSO has created, fostered, maintained, and tolerated an environment and culture of law enforcement brutality and deliberate indifference to the constitutional rights of those in its custody.

47.     In this case, the number of BCSO officers involved in the multiple uses of excessive force against Ms. Gotthelf makes clear that the coordinated actions that they took (as well as every individual officers' failure to prevent the use of obviously excessive force by their colleagues) were dictated by the BCSO customs, practices, or policies.

48.     Indeed, the individually named Defendants who inflicted this force on Ms. Gotthelf, including strapping her in a restraint chair, inflicting both the hypoglossal and hip

Case 1:19-cv-03102-WJM   Document 1   Filed 10/31/19   USDC Colorado   Page 9 of 22

flexor pain compliance pressure points, and putting a mask over Ms. Gotthelf's head, repeatedly insisted that what they were doing was policy, and that they had no choice in the matter.

49.     Moreover, the fact that the commanding officer on the scene, Sergeant Reiss, not only ratified his subordinates' excessive force, but himself used the most egregious and unnecessary force—tasing Ms. Gotthelf while she was handcuffed and fully restrained—is strong evidence of BCSO's custom, practice, and/or policy of using excessive force.

50.     Indeed, BCSO's policies provide for tasing detainees who are restrained. Such tasing violates the clearly established constitutional rights of detainees, including Ms. Gotthelf.

51.     Upon information and belief, none of the Defendants were disciplined for the clear uses of excessive force and none of the Defendants were given additional training to make sure that they understood and abided by the Constitution's protection of detainees and inmates.

52.     Unfortunately, Ms. Gotthelf's experience is abhorrent, but not aberrant. In addition to the excessive force used against Ms. Gotthelf, Boulder County law enforcement officers have unlawfully used excessive force against other citizens, particularly targeting some of society's most vulnerable: those with mental and other disabilities.

53.     For example, throughout 2016, BCSO officers at the Boulder County Jail repeatedly used excessive force against Ryan Partridge. Mr. Partridge is severely mentally ill, and all the officers at the jail were aware of his condition. Even so, the officers repeatedly unreasonably tased Mr. Partridge without justification. They did so at least seven times over the span of just over nine months, and each tasing was accompanied by additional forms of excessive force from one or more other BCSO jail officers who was present. On one of these occasions, Boulder County Jail officers tased Mr. Partridge while he was fully restrained in a restraint chair, just as they did Ms. Gotthelf.

54.     BCSO officers have engaged in a persistent practice of law enforcement misconduct, and the officials responsible for assuring that such misconduct does not occur have consistently failed to properly train, supervise, and discipline individual officers who have engaged in such misconduct.

55.     Justice System Partners ("JSP Report"), an independent consulting firm, prepared a 2016 report[1] to provide recommendations on how to handle different aspects of the Boulder County Jail's overcrowding problem and to identify gaps in resources such as mental health services. The JSP Report included: "Key Finding: Access to mental health programming for offenders in the Boulder County is inadequate." JSP Report at 61. "There were considerable complaints that if an officer had a seriously mentally ill offender, MHP (Mental Health Partners) would always find ways to decline serving them." *Id.* "There are minimal mental health services in the Jail in large part because MHP (Mental Health Partners) cannot fill funded treatment positions." "The Jail should offer increased programming for the mentally ill and create a specialized unit to deliver treatment most effectively."

56.     Supervisory personnel at the Boulder County Jail have publicly admitted they cannot handle mentally ill inmates.

57.     In an interview with the Boulder Daily Camera,[2] staff at the Boulder County Jail made the following statements:

- "It's an ugly truth, but we don't consider ourselves rehabilitating people in here.  And that's because our resources are too strapped," Sgt. Lydia Mitchell;
- "We're deputies, not mental health specialists.  Some of the hardest decisions we make currently are in housing our mental health population . . ." Sgt. Lydia Mitchell.

---

[1] Full report available at *https://assets.bouldercounty.org/wp-content/uploads/2017/05/JSPBoulderReport2016.pdf*

[2] Full article available at *http://www.dailycamera.com/boulder-county-news/ci_26001584/boulder-county-jails-severe-overcrowding-blamed-largely-age*

- "In addition to contracting with Mental Health Partners, the jail has two mental health experts on payroll, though Mr. Pelle would prefer a minimum of four. The lack of attention given to those inmates is hard on them, and hard on staff."

58.     The Boulder County Defendants' failure to find wrongdoing and failure to discipline officers in this case and in the case of the abuse of Mr. Partridge reflects a custom, policy or practice of ratifying blatantly illegal and improper conduct. These ratifications evidence that such police conduct is carried out pursuant to the regimen of training provided by Boulder, and that such conduct is customary within the BCSO.

59.     It is the Boulder County Defendants' responsibility to properly train BCSO officers to ensure they perform their duties correctly and to discipline, rather than ratify, their improper conduct, so that officers can learn from their mistakes and perform their jobs correctly moving forward, and to serve as an example so that other officers will be made aware that the use of excessive force is not acceptable. The Boulder Defendants' failure to do so has led to its officers' unconstitutional conduct and will lead to more unconstitutional conduct in the future.

**D.  <u>The Boulder County Defendants are liable for the Individual Defendants' violation of Ms. Gotthelf's rights.</u>**

60.     Defendants' unlawful conduct, as set forth in detail herein, amounts to a custom and widespread practice, even if not authorized by written law or express municipal policy, so pervasive and well-established as to constitute a custom or usage with the force of law.

61.     Through the Boulder County Defendants' ratification of excessive force and disability discrimination, the Boulder County Defendants have condoned the Individual Defendants' illegal conduct.

62.     The Boulder County Defendants failed to properly train and supervise their employees to avoid excessive force and disability discrimination.

63.     The Boulder County Defendants knew, or had constructive knowledge, that their employees would use excessive force against detainees, and especially detainees with disabilities, violating detainees' constitutional and federal statutory rights.

64.     The Boulder County Defendants also knew, or had constructive knowledge, that their employees would fail to accommodate detainees with disabilities, violating detainees' constitutional and federal statutory rights.

65.     The Boulder County Defendants were deliberately indifferent to Plaintiff's constitutional rights, because the Boulder County Defendants knew that individuals in Plaintiff's position would be at a substantial risk of suffering dangerous consequences from the Boulder County Defendants' failure to properly train and supervise their employees.

66.     The Boulder County Defendants could have and should have pursued reasonable methods for the training and supervising of such employees, but intentionally chose not to do so.

67.     The Boulder County Defendants' policies, customs, or practices in failing to properly train and supervise their employees were a moving force and proximate cause of Defendants' violation of Plaintiff's constitutional rights.

68.     The Boulder County Defendants' custom, policy, and practice of encouraging, condoning, tolerating, and ratifying excessive force and disability discrimination, as described herein, were the moving force behind, and proximate cause of, Defendants' violation of Plaintiff's constitutional rights.

69.     The Boulder County Defendants' acts or omissions caused Ms. Gotthelf damages in that she suffered physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, privacy, and sense of security and individual dignity, among other injuries, damages, and losses.

70.     The Boulder County Defendants' actions, as described herein, deprived Ms. Gotthelf of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused her other damages.

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment Violation – Excessive Force
### (Against All Defendants)

71.     Plaintiff incorporates all other paragraphs of this Complaint for purposes of this Claim.

72.     Each of the individually named Defendants was acting under color of state law in their actions and inactions at all times relevant to this Claim.

73.     At the time when Defendants had Plaintiff pinned to a restraint chair, inflicting multiple instances of pressure point pain, and tasing her, Plaintiff had a clearly established Fourteenth Amendment right, as a pre-trial detainee, to be secure in her person from the use of excessive force.

74.     Any reasonable law enforcement or correctional officer knew or should have known of this clearly established right.

75.     Each individually named Defendant engaged in use of force that was objectively unreasonable based on the facts and circumstances confronting them, violating Plaintiff's Fourteenth Amendment rights.

76.     Each individually named Defendant took an active part in the use of force, and no BCSO deputy intervened to prevent their fellow officers' use of obviously excessive force.

77.     Defendants' respective actions and inactions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff's federally protected rights.

78.     The acts and omissions of each Defendant described herein, were the legal and proximate cause of Ms. Gotthelf's damages.

79.     The acts and omissions of Defendants were engaged in pursuant to the customs, policies, and practices of Boulder County, which encourages, condones, tolerates, and ratifies the use of excessive force by its law enforcement officers.

80.     The acts or omissions of the Boulder County Defendants caused Ms. Gotthelf damages in that she suffered severe pain, helplessness, and humiliation, resulting in serious physical and mental injuries and trauma.

## SECOND CLAIM FOR RELIEF
**42 U.S.C. § 12132, *et seq.* – Violation of Title II of the Americans with Disabilities Act of 1990, as Amended**
**Unlawful Discrimination and Failure to Reasonably Accommodate**
**(Against Boulder County Defendants)**

81.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

82.     The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and specifically 42 U.S.C. §§ 12131-12134, prohibits discrimination in public services on the basis of disability. 42 U.S.C. § 12132 provides:

> Subject the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

83.     The ADA defines a "public entity" to include any state or local government or any department, agency, special purpose district, or other instrumentality of a State or local

government, 42 U.S.C. § 12131(1). The Boulder County Sheriff's Office, the Jail and Boulder County each are a "public entity" within the meaning of the ADA.

84.     At all relevant times, Plaintiff was a person that Defendants and other agents of Boulder County knew and/or perceived to have a disability, including mental health issues and suicidal ideation, that substantially limited one or more of her major life activities.

85.     Plaintiff, with or without reasonable modifications to rules, policies or practices, met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the Defendants. Thus, Plaintiff was a "qualified individual with disabilities" within the meaning of the ADA, 42 U.S.C. § 12131(2).

86.     Plaintiff was qualified to participate in the services, programs, activities, and benefits provided to arrestees and detainees at the Jail within the meaning of Title II of the ADA.

87.     The individually named Defendants and other agents of Boulder County were on notice regarding Plaintiff's mental health issues including but not limited to her potentially suicidal state of mind.

88.     The individually named Defendants and other agents of Boulder County targeted and discriminated against Plaintiff on the basis of her disabilities and failed to reasonably accommodate her disabilities despite knowing of her mental health issues and possible suicidal ideation, and related impairments and conditions.

89.     As the Defendants and other agents of Boulder County knew, reasonably accommodating Ms. Gotthelf's disabilities would not have presented an undue burden to the jail or fundamentally altered the jail's programs and services.

90.     As the Defendants and other agents of Boulder County knew, reasonable accommodations for Ms. Gotthelf (that they willfully withheld from her) included but were not

limited to assigning her to a secure, regularly monitored single-person cell in the jail without also demanding that she strip, applying multiple pain compliance techniques, tasing her, fully restraining her, and placing a hood over her head, and leaving her restrained for hours, as Defendants did without justification. This easily could have been done humanely and non-forcefully.

91.     As Defendants and other agents of Boulder County knew, other available reasonable accommodations included promptly providing Ms. Gotthelf with mental health counseling at the jail, or promptly transporting her to another secure location that had more psychological and psychiatric services available on-site (e.g., an emergency room or in-patient psychiatric facility). Both options were obviously practicable for Ms. Gotthelf, who was arrested for an exceedingly minor, non-violent alleged offense and did not present a significant flight risk or threat to others. There was no legitimate penological basis for keeping Ms. Gotthelf in jail under the circumstances.

92.     The actions and inactions of the Defendants and other agents of Boulder County violated Title II of the ADA and its implementing regulations.

93.     The individually named Defendants and other agents of Boulder County had no legitimate basis for violating Plaintiff's rights conferred by the ADA.

94.     The individually named Defendants and other agents of Boulder County engaged in these actions and inactions intentionally, willfully, and wantonly.

95.     The actions and inactions of Defendants and other agents of Boulder County were the proximate and legal cause of Plaintiff's injuries.

96.     Boulder County failed to properly train, supervise and/or discipline its employees regarding the proper treatment of, and accommodations for, individuals with mental disabilities, real or perceived.

97.     This inadequate training, supervision, and/or discipline results from a conscious or deliberate choice to follow a course of action from among various alternatives available to the Boulder County Defendants.

98.     Such failure to properly train and supervise caused the violations of Plaintiff's federally protected rights described herein.

99.     Plaintiff has been and continues to be legally and proximately damaged by Defendants' unlawful conduct under the ADA.

## THIRD CLAIM FOR RELIEF
### 29 U.S.C. § 701, *et seq.*—Violation of the Rehabilitation Act of 1973, as Amended
### Unlawful Discrimination and Failure to Reasonably Accommodate
### (Against Boulder County Defendants)

100.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

101.     At all times relevant to this Complaint, the individually named Defendants and other agents of Boulder County knew and/or perceived Ms. Gotthelf as suffering from mental health issues including but not limited to suicidal ideation.

102.     Therefore, Ms. Gotthelf was an individual with a real or perceived handicap or disability within the meaning of the Rehabilitation Act of 1973.

103.     Ms. Gotthelf was qualified to participate in the services, programs, activities, and benefits provided to citizens of the County of Boulder within the meaning of the Rehabilitation Act of 1973.

104.     The Boulder County Defendants and their programs and activities receive – and have received at all times relevant to this Complaint – federal financial assistance as that term is used in 29 U.S.C. § 794.

105.     The Boulder County Defendants excluded Ms. Gotthelf from participation in, denied her the benefits of, and subjected her to discrimination in programs and activities solely by reason of her disability in violation of 29 U.S.C. § 794 and its implementing regulations.

106.     The Boulder County Defendants deliberately failed to reasonably accommodate Ms. Gotthelf's known disabilities – including her mental health issues and suspected suicidal ideation – and instead treated her worse than her non-disabled counterparts in the jail solely because of her disability.

107.     As the Defendants and other agents of Boulder County knew, reasonably accommodating Ms. Gotthelf's disabilities would not have presented an undue burden to the jail or fundamentally altered the jail's programs and services. Examples of reasonable accommodations the Defendants and other agents of Boulder County deliberately and unnecessarily withheld from Ms. Gotthelf are more fully described above.

108.     The Boulder County Defendants are liable for the acts and/or omissions of their agents and employees. Defendant Boulder County, either directly or by and through its agents, discriminated against Ms. Gotthelf on the basis of her real and/or perceived disability.

109.     In violating the Rehabilitation Act, the Boulder County Defendants acted intentionally, maliciously, and/or with reckless and/or deliberate indifference to Plaintiff's federally protected rights.

110.     The Boulder County Defendants' illegal misconduct has legally and proximately caused Plaintiff significant damages.

111.     The conduct of the Boulder County Defendants was the proximate cause of Plaintiff's injuries, damages, and losses.

112.     The Boulder County Defendants failed to properly train, supervise and/or discipline their employees regarding the proper treatment of, and accommodations for, individuals with mental disabilities.

113.     This inadequate training, supervision, and/or discipline results from a conscious or deliberate choice to follow a course of action from among various alternatives available to the Boulder County Defendants.

114.     Such failure to properly train and supervise caused the violations of Plaintiff's federally protected rights described herein.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment Violations**
**Supervisory Liability for**
**Failure to Train and Supervise**
**(Against Defendant Pelle)**

115.     Plaintiff hereby incorporates all other paragraphs of this Complaint as though fully set forth herein.

116.     Defendant Pelle has a duty to train and supervise duty sheriffs, staff sergeants, captains, and other jail personnel on reasonable use of force against pretrial detainees.

117.     Defendant Pelle failed to discharge this duty, causing the repeated and concerted excessive force Ms. Gotthelf suffered at the hands of at least six of Defendant Pelle's subordinates.

118.     Defendant Pelle acted recklessly, intentionally and with deliberate indifference to the constitutional rights of Ms. Gotthelf in failing to adequately train and supervise deputy sheriffs, staff sergeants, captains, and other jail personnel.

119. Defendant Pelle's failure to properly train and supervise his subordinates was the moving force and proximate cause of the violation of Ms. Gotthelf's constitutional rights.

120. The acts or omissions of Defendant Pelle caused Ms. Gotthelf damages in that she suffered physical, mental, and emotional trauma.

121. The actions of the Defendants as described herein deprived Ms. Gotthelf of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused her other damages.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Violations of Title II of the ADA and the Rehabilitation Act of 1973**
**(Against All Defendants)**

122. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

123. 42 U.S.C. § 1983 creates a cause of action to redress the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

124. For the reasons above, Boulder and its agents deliberately violated Ms. Gotthelf's federally protected rights under Title II of the ADA and the Rehabilitation Act of 1973.

125. Therefore, Boulder County and its agents deprived Ms. Gotthelf of her rights "secured" by the "laws" of the United States.

126. The remedial devices in Title II and the Rehabilitation Act of 1973 are not sufficiently comprehensive to demonstrate congressional intent to preclude the remedy of suits under § 1983.

127. Accordingly, Ms. Gotthelf brings a cause of action under § 1983 to enforce her clearly established rights protected by Title II and the Rehabilitation Act.

128. The acts and omissions of Defendants were engaged in pursuant to the customs, policies, and practices of Boulder County, which encourages, condones, tolerates, and ratifies the disability discrimination and failures to accommodate by its law enforcement officers.

129. The Defendants' and other Boulder County agents' violations of Ms. Gotthelf's rights under Title II and the Rehabilitation Act were the legal and proximate cause of Ms. Gotthelf's damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law and equity, including, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, emotional pain, suffering, mental anguish, loss of enjoyment of life, medical bills, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e. Pre-judgment and post-judgment interest at the highest lawful rate;

f. Attorneys' fees and costs; and

g. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 31st day of October 2019.

KILLMER, LANE & NEWMAN, LLP

*s/ Mari Newman*

_____
Mari Newman
Reid Allison
1543 Champa Street, Suite 400

Denver, CO 80202
(303) 571-1000
mnewman@kln-law.com
rallison@kln-law.com

ATTORNEYS FOR PLAINTIFF